UNITED STATES of America,
Plaintiff–Appellee,

v.

Daryn PURVIS, Defendant–Appellant.

No. 92–3277.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 7, 1994.

Decided April 22, 1994.

Rehearing Denied June 23, 1994.

Sandra G. Roland, Asst. Federal Public Defender, Washington, DC, argued the cause, for appellant. With her on the brief was A.J. Kramer, Federal Public Defender, Washington, DC.

Robert T. Swanson, Asst. U.S. Atty., Washington, DC, argued the cause, for appellee. With him on the brief, were Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and Norman C. Bay, Asst. U.S. Attys., Washington, DC.

Before WALD, EDWARDS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Appellant Daryn Purvis was convicted after a jury trial of one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988). Purvis raises several claims in this appeal, including a challenge to the district court's reasonable doubt jury instruction, which equated certainty "beyond a reasonable doubt" with "strong belief." The government concedes that we have previously held that a "strong belief" reasonable doubt instruction is constitutionally deficient, but argues that appellant did not properly object to the instruction before the district court and that therefore we review the instruction only for plain error. Because we find that the objection was sufficient under the circumstances, we set aside appellant's conviction and do not consider his other claims.

I. BACKGROUND

Purvis was arrested on January 21, 1992 on an Amtrak train travelling from New York City to Columbia, South Carolina. The incident began when members of the Metropolitan Police Department Interdiction Unit

and Amtrak investigators discovered approximately 3.7 pounds of crack cocaine in the sleeping compartment in which Sherry Varick and her son were travelling. According to the government's witnesses, after Varick was placed under arrest, she called for Purvis, who she described as her husband.[1] Investigator Cook then went to find Purvis, who was travelling on a different car of the train. While performing a consensual search of Purvis' garment bag, Cook found approximately 7,000 ziplock bags and a heatsealer. Cook also retrieved a piece of paper in appellant's handwriting which detailed the information regarding the travel arrangements for Purvis, Varick, and her son. Although Purvis and Varick made their train ticket reservations at different times and purchased their tickets separately, the reservations were made eight minutes apart, and the tickets were bought two minutes apart from the same Amtrak agent at Penn Station with consecutively numbered $100 bills. In addition, Varick's son testified that Purvis had given him the cookie and cracker boxes in which the cocaine was later found and told him not to open the boxes.

At trial, after closing arguments, the trial judge gave the parties a copy of his proposed jury instructions. Subsequent to an off-the-record discussion of the instructions, the following interchange took place between Judge Harris and Mr. Holloway, the defense counsel:

The Court: Okay. We've been working informally on instructions. And Mr. Holloway has been with me before and knows that I prefer to have counsel put their positions on the record before we bring in the jury so they are not stranded in the jury box at the tail end of the case.

And I understand, Mr. Holloway, that you want to express your preference for the Redbook reasonable doubt instruction as compared with the pattern jury instruction drafted by the Subcommittee on Pattern Jury Instructions of the Judicial Conference of the United States....

Mr. Holloway: That's correct, your honor.... [F]or the record, we would submit ... for the court's consideration of the instruction 2.09 in the Redbook. From the formal manual, the Redbook instructions are 2.09, reasonable doubt instruction.... Those would be our *objections*....

The Court: ... Of course, Mr. Holloway, you and I have been in court together; and you know my position exactly, but the record doesn't reflect it.... [A]s you know, I, through the passage of years, have begun to use a number of instructions from the Pattern Jury Instruction book which was prepared by the Judicial Conference Subcommittee. The ones that I use I consider to be preferable. I still have not seen a reasonable doubt instruction I'm totally satisfied with; but I'm using the one from that book as opposed to the Redbook.

Trial Transcript ("Trial Tr."), Sept. 4, 1992 at 3–8 (emphasis added). The reasonable doubt instruction, however, was not taken verbatim from the Federal Judicial Center's Pattern Criminal Jury Instructions of 1987 ("Pattern Instructions"). Instead, whereas Judge Harris' instruction twice equated proof beyond a reasonable doubt with "proof which leaves you with a *strong belief* in the defendant's guilt," Trial Tr., Sept. 4, 1992 at 101–02 (emphasis added), the Pattern Instructions use the phrase "firmly convinced." *See United States v. Merlos*, 984 F.2d 1239, 1241 (D.C.Cir.1993); *cf. Victor v. Nebraska*, —— U.S. ——, ——, 114 S.Ct. 1239, 1252–53, 127 L.Ed.2d 583 (1994) (Ginsburg, J., concurring) (sanctioning Federal Judicial Center's reasonable doubt instruction). The jury convicted Purvis on September 8, 1992 of one count of possession with intent to distribute cocaine and he was sentenced to 324 months' imprisonment.

## II. ANALYSIS

In *United States v. Merlos*, 984 F.2d 1239, this court determined that a jury instruction that equates certainty "beyond a reasonable doubt" with a "strong belief" is constitutionally deficient. *See also United States v. Washington*, 12 F.3d 1128, 1138 (D.C.Cir. 1994). Finding the error harmless in that case, we refused to overturn the conviction of either of the two defendants even though one had objected to the reasonable doubt instruction. 984 F.2d at 1242–43. Shortly thereafter, the Supreme Court held that a constitutionally deficient reasonable doubt instruction is never harmless error. *See Sullivan v.*

---

**1.** The evidence later showed that Purvis and Var- ick were engaged rather than married.

**1130**

*Louisiana,* — U.S. —, —, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993). As a result, we reversed the conviction of Victor Loriano, the defendant who had timely objected to the "strong belief" reasonable doubt instruction in *Merlos. See United States v. Loriano,* 996 F.2d 424 (D.C.Cir.1993) (per curiam). The issue before us now, therefore, is whether appellant sufficiently objected to Judge Harris' "strong belief" reasonable doubt instruction.

As a basis of comparison, we begin by examining the objection characterized as "proper" in *Merlos.* 984 F.2d at 1241. According to the trial transcript, Loriano's objection, also made to Judge Harris, consisted of the following statement: "the defense would like to object to the reasonable doubt instruction that the court has constructed that we consider somewhat prejudicial and different than the standard Redbook instruction. We did, in fact, request the Redbook instruction on that particular instruction in issue." *United States v. Loriano,* No. 90–0518, Trial Tr. at 4 (May 21, 1991). There is no material basis on which to distinguish Loriano's objection from the objection in this case. Here, as in *Merlos,* after Judge Harris informed defense counsel in off-the-record discussions of the intended reasonable doubt instruction, Purvis objected and requested the Redbook instruction. The omission in Purvis' objection of the "slightly prejudicial" phrase used by Loriano's counsel cannot reasonably be deemed to make the critical difference. Although the government contends that Purvis neither distinctly stated which parts of the court's reasonable doubt instruction he found objectionable, nor adequately explained the basis for his objection, *cf.* FED. R.CRIM.P. 30 (1994), we may infer from the record that the trial judge already knew of defense counsel's objections to the "strong belief" reasonable doubt instruction, though we cannot know the degree to which counsel had explained his reasons for such objections. A reading of the colloquy between the court and defense counsel indicates that the trial judge customarily gave the constitutionally deficient "strong belief" reasonable doubt instruction and that before going "on the record" to express his preference for the Redbook instruction, Holloway had communicated his objections to the court in the off-the-

record exchange. Although we cannot be certain about exactly what occurred in the off-the-record exchange, where the record is ambiguous we would rather err on the side of recognizing an objection that was not made with the desired specificity than rejecting one that was so made. The circumstances of this case thus render appellant's objection adequate. Nonetheless, we do not suggest that defense counsel may always preserve access to the harmless error standard on appeal by merely requesting or expressing a preference for a different set of jury instructions than those proposed by the district court. The objection must, in light of the surrounding circumstances, be sufficient to provide the district court with some indicia of the potential defects in the instruction.

Because Purvis' counsel adequately objected to the constitutionally defective reasonable doubt instruction, we reverse his conviction and remand for a new trial. The conviction is

*Vacated and the cause is remanded for a new trial.*