**UNITED STATES of America, Appellee,**

v.

**Henry BERROA, Appellant.**

**No. 93–3130.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 2, 1995.

Decided Feb. 14, 1995.

Brian C. Plitt, Washington, DC, appointed by the court, argued the cause and filed the briefs for appellant.

S. Hollis Fleischer, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With her on the brief were Eric H. Holder, Jr., U.S. Atty., John R. Fisher and Roy W. McLeese, III, Asst. U.S. Attys., Washington, DC.

Before: EDWARDS, Chief Judge, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge.

Henry Berroa appeals his conviction, after a jury trial, for unlawfully possessing with intent to distribute five grams or more of

cocaine base in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B)(iii). The only issue we need consider is whether the district court committed reversible error in giving, over Berroa's objection, an *"Allen"* (*Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)) charge that departed from the one required by *United States v. Thomas,* 449 F.2d 1177, 1187 (D.C.Cir.1971) (*in banc* ).

The case went to the jury on the second day of Berroa's two-day trial. After three to four hours of deliberation, the jury sent the court a note stating: "We, the jury, cannot reach a decision. We are hung...." Berroa's counsel requested the court to discharge the jury. The prosecution asked the court to instruct the jury to continue their deliberations, to which the court responded: "Well not only am I going to tell them that, I'm going to give them the *Allen* charge, but I am going to incorporate some of ... what are called alternative 'B,' which has been approved by the District of Columbia Court of Appeals but not by our court of appeals ... [T]he alternative 'A' that's been approved by our court of appeals, in my opinion, is totally useless." The court concluded its remarks by saying, "[o]ver objection, obviously, from the defense," and defense counsel immediately objected.

The court summoned the jury back to the courtroom and told them "[n]ow, you may think you're hung, and you may think that this is the end of it. But long experience has shown me that you have not deliberated long enough for someone to reach the conclusion that you are hung, that you must be hung, that you cannot possibly reach a verdict." The court then gave the following instruction and ordered the jury to "deliberate some more":

> The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.
>
> It is your duty as jurors to consult with one another and to deliberate with a view towards reaching an agreement. Each of you—if you can do so without violence to individual judgment. Each of you must

decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.

> **In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of the other jurors, yet, you should examine the questions submitted to you with a candor and with a proper regard and deference to the opinions of each other.**
>
> **You should consider that it is desirable that the case be decided. You are selected in the same manner and from the same source from which any future jury must be, and there is no reason to suppose that the case will ever be submitted to twelve persons more intelligent, more impartial, and more competent to decide it or that more or clearer evidence will be produced on one side or the other in any future trial.**
>
> **With this view, it is your duty to decide the case, if you can conscientiously do so.** You are not partisans. You are judges, judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.
>
> *With that additional instruction, I would like you to go back and try again.*

The jury reconvened and approximately ninety minutes later returned a verdict of guilty.

 The court's remarks and instructions were a direct and intentional departure from our "supervisory" in banc decision in *United States v. Thomas.* We there reversed a conviction because of the trial court's coercive anti-deadlock charge to the jury. *Thomas* specifically adopted the American Bar Association standard "for the guidelines which future renditions of *Allen*-type charges must abide, and the ABA approved instruction as the vehicle for informing jurors of their responsibility in situations wherein judges decide to [give an anti-deadlock charge]." 449 F.2d at 1187. Since *Thomas,* we have "require[d] trial judges to comply with the ABA standard." *Id.* at 1186. The ABA-approved instruction is reproduced in the *Criminal Jury Instructions for the District of Colum-*

*bia,* Instruction 2.91, Alternative "A" (4th ed.) (the "Redbook").[1] The Redbook contains not only Alternative "A," which is taken almost verbatim from the instruction cited with approval in *Thomas,* 449 F.2d at 1184 n. 46, but also Alternative "B," portions of which we disapproved in *Thomas,* 449 F.2d at 1180, 1187 n. 71, but which the District of Columbia Court of Appeals found acceptable in *Winters v. United States,* 317 A.2d 530, 534 (D.C.1974). The district court borrowed from both "A" (in plain type) and "B" (in bold type) and added some words of its own (in italics).

In departing from the settled law of this circuit, the district court observed that "it would be nice if the Court of Appeals had an opportunity to reevaluate its previous decision with respect to the *Allen* charge." The court's remarks were ill-considered. *Thomas* adopted the ABA standard anti-deadlock instruction to put an end to appeals of this nature and the concomitant "uncertainties of gauging various *Allen*-type renditions in terms of the coerciveness of their impact." 449 F.2d at 1186. When each judge freely devises his or her own variations on the same theme, this causes a "drain on appellate resources" as the "inevitable aberrations" inevitably precipitate more and more appeals. *Id.* at 1184, 1185. We therefore flatly refuse the district court's invitation to crack open the Pandora's box *Thomas* nailed shut. If the district judge in this case is convinced that the approved *Allen* charge needs adjustment, a proposition the United States Attorney notably does not sponsor in this case, the judge may suggest changes to the Judicial Council for the circuit so that it may, in the words of *Thomas,* conduct "a wide-ranging inquiry as to the necessity for and possible consequences of modification." *Id.* at 1188.

The government attempts to salvage the case on the ground that Berroa did not properly object to the deviant charge. *See* FED.R.CRIM.P. 52(b). There is nothing to this. Counsel are required to make their objections known in order to "provide the district court with some indicia of the potential defects in the instruction." *See United States v. Purvis,* 21 F.3d 1128, 1130 (D.C.Cir. 1994). Here the court knew full well that it would be violating the law of this circuit and, upon announcing its plan to do so, invited an objection, which Berroa's counsel promptly supplied. Given the district court's intentions, nothing more was required to preserve the issue for appeal.

Our decision in *United States v. Spann,* 997 F.2d 1513 (D.C.Cir.1993), which the government invokes, cannot save this case from reversal. The district court in *Spann* gave two anti-deadlock charges, neither of which fully complied with *Thomas.* After the first, the jury announced once again that it was deadlocked. *Id.* at 1518. After the second, the jury returned a verdict of guilty. The first charge was not coercive, we held, in light of the jury's response to it. *Id.* The second charge, we determined, was "entirely unobjectionable," containing as it did "all of the elements required by the ABA standard, including the one most significant to both the *Thomas* court and to Spann's appeal: 'that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.'" *Id.* at 1518–19 (citation omitted). The district court here omitted this important element of the ABA standard. The gap was not filled with the language the court lifted from Alternative "B" in the Redbook. We cannot, and will not, modify the instruction required by *Thomas*

---

1. The adopted instruction provides:

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to the verdict. In other words, your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

by treating departures from it as harmless. *Spann* did no such thing. Spann's counsel had not objected to either the original or the supplemental *Allen* charge. When there is no objection, defense counsel may be supposing that the jury is divided in favor of acquittal and that an *Allen* charge will benefit the defense. In *Spann,* we therefore analyzed the instruction in terms of plain error, 997 F.2d at 1518, a more stringent standard for reversal than Berroa has to satisfy. Furthermore, the jury here reached its guilty verdict just ninety minutes after the court's instructions, which tends to show coercive effect. *See Lowenfield v. Phelps,* 484 U.S. 231, 240, 108 S.Ct. 546, 552, 98 L.Ed.2d 568 (1988).

Because the court departed from the anti-deadlock instruction approved by this court in *Thomas,* the charge was presumptively coercive. Accordingly, the conviction is vacated and the case is remanded for a new trial.

*So ordered.*